UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JORGE PONCE,

    9506 Retriever Road
    Burke, VA 22015

    Plaintiff,

v.

JAMES H. BILLINGTON,
Librarian, United States Library of Congress

    101 Independence Avenue, SE
    Washington, DC 20540

    Defendant.

C.A. No. _____

**COMPLAINT**
(Discrimination in Federal Employment)

Jorge Ponce hereby sues James H. Billington, Librarian of the United States Library of Congress, for race, national origin, and gender discrimination in federal employment.

Jurisdiction

1.    This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.

Venue

2.    Venue properly lies in this Court under 28 U.S.C. § 1391(e)(2) and 42 U.S.C. § 2000e-5(f). The discriminatory acts occurred in this district. Plaintiff would have worked for Defendant in this district but for the discrimination.

Exhaustion of Administrative Remedies

3. Plaintiff has exhausted his administrative remedies prior to filing this law suit. Pursuant to Library of Congress regulations, plaintiff timely initiated an informal complaint of discrimination on October 2, 2006, and a formal complaint of discrimination before that Agency on November 27, 2006. The Librarian's designee issued a decision on that complaint on March 24, 2008. Plaintiff did not seek reconsideration of the decision and thus it became a final administrative decision. This suit is filed within 90 days of that decision.

Parties

4. Plaintiff Jorge Ponce, a Hispanic, Cuban-American male, is a citizen of the United States and a resident of the Commonwealth of Virginia. At all times relevant to this suit, he was employed with the United States Department of Commerce in Washington, DC.

5. Defendant is the Librarian of Congress and he is sued in his official capacity only.

Factual Basis of the Complaint

6. At the time of the events giving rise to this complaint, Plaintiff worked as the Director of the Policy and Evaluation Division at the Office of Civil Rights, United States Department of Commerce, GS-0260-15. Plaintiff has held that position since April 1, 2000.

7. In his capacity as the Director of the Policy and Evaluation Division, Plaintiff was and is responsible for preparing briefings for Commerce Department executives on numerous civil rights issues such as affirmative employment, developing agency policy, drafting Secretarial policy statements, providing guidance on civil rights issues, developing and reviewing procedures for equal employment opportunity case processing, overseeing various programs for

Hispanics, the disabled, Asian and Pacific Islanders, Native Americans, Women, African Americans, among others; coordination of the preparation of the Department's affirmative employment programs reports; plans and plan updates for the Equal Employment Opportunity Commission and various White House initiatives; providing guidance to managers and employees on reasonable accommodation policies; at one time, managing and marketing alternative dispute resolution (ADR) throughout the Agency; preparing talking points for management officials; preparing and submitting policy revisions of the affirmative action programs, and in the past, for the Federal Equal Opportunity Recruitment Program and the Disabled Veterans Affirmative Action Program; as well as many other tasks relevant to equal opportunity and diversity matters.

8. While in his position, Plaintiff at one time supervised six EEO managers ranging from Grades 11 through 14, as well as two other lower-graded employees. After reorganizing the division, Plaintiff supervised three EEO managers at the Grades 15 and 14 level, in addition to various summer interns. He also had additional prior supervisory experience when he worked as a Section Chief in the Government Printing Office, Library Programs Services. He was named one of the most influential Hispanics in the Nation in the October 2002 issue of Hispanic Business magazine. Mr. Ponce has worked on important civil rights initiatives with the American Federation of Government Employees (AFGE), the National Association for the Advancement of Colored People (NAACP), Blacks in Government (BIG), and the major plaintiffs' law firms. Mr. Ponce has served as Vice-Chair of the Council of Federal EEO and Civil Rights Executives from 1997-2000, and as Co-Chair from 2001-2008. The Council is an organization founded in 1993 to represent the needs of EEO professionals in the federal sector

before the Equal Employment Opportunity Commission, the Office of Personnel Management, and the Merit Systems Protection Board. He has received numerous accolades for his achievements, including the 1999 Federal Hispanic Heritage Month Excellence award from Energy Secretary Bill Richardson for being one of the top 11 Hispanic Employment Program Managers in the nation. Mr. Ponce also received the Secretary of the Treasury Award in July 2000 for his work in helping organize the Federal Hispanic Executive Summit III, co-sponsored by the Treasury Department and the National Association of Hispanic Federal Executives (NAHFE). Mr. Ponce has experience in all facets of an EEO Program – EEO counseling, policy and evaluation, affirmative action, special emphasis programs, alternative dispute resolution, writing final agency decisions, and serving as the Contracting Officer's Technical Representative to verify the quality of Reports of Investigations – as well as a proven record as a supervisor, including time supervising Selectee Hayes for approximately four years. While at the Treasury Department, Mr. Ponce served on a detail to the White House Initiative on Educational Excellence for Hispanic Americans. He also holds a Master's Degree in Library Science from the Catholic University of America in Washington, DC.

9. One of the employees supervised by Plaintiff was Deborah Hayes. She was Plaintiff's direct subordinate from October 2001 through May 27, 2005. Ms. Hayes was a Grade 14, Equal Employment Manager, and had primary responsibility for serving as the manager of the Minority Servings Institutions ("MSI") program – a category of educational establishments made up primarily of Historically Black Colleges and Universities, Hispanic Serving Institutions, and Tribal Colleges and Universities.

10. In that capacity, Ms. Hayes was the Department's point person in preparing

reports to the White House Initiatives on the MSI program. She also put together two technical assistance workshops relating to various Department of Commerce functions. She was also responsible for planning National African American History Month and Women's History Month programs at the Department. She also coordinated a diversity program once.

11.     While under Plaintiff's supervision, Ms. Hayes was not herself a supervisor. On a few occasions when Plaintiff was absent from the office, Ms. Hayes and another Grade 14 employee rotated as the Acting Director of the Policy and Evaluation Division. On those occasions, Ms. Hayes' task was simply to ensure the continuity of the work of the Division. She never had responsibility for approving leave, rating the quality of work products, or issuing performance appraisals. She was not responsible for supervising senior EEO personnel, was not a Deputy Division Chief, and did not serve as a senior advisor to either the Secretary or the Deputy Secretary of the U.S. Department of Commerce.

12.     After being supervised by Plaintiff for approximately four years, Ms. Hayes was selected for a GS-15 position at the Library of Congress and began working there in approximately May 2005.

13.     In June 2006, Plaintiff filed an application for promotion for the position of Director for Workforce Diversity at Library of Congress, SL-0260, under Vacancy Number 060157. The position was advertised at the Senior Executive Service level.

14.     In his application for the position, Plaintiff described in detail his duties and experience, as described above and more.

15.     After he submitted his application, Plaintiff was notified that he would be interviewed for the position.

5

16. The Library's Affirmative Action Recruitment Plan indicated that there was an under-representation of "Hispanic males" in the job series of SL-0260. There were three Hispanic males, including Plaintiff, who were interviewed for this position. One of the responsibilities of the Office of Workforce Diversity was obviously to ensure and increase diversity in the workforce at the Library of Congress.

17. At the interview, Plaintiff was interviewed by a panel of three people: General Donald Scott, Deanna Marcum, and Gilbert Sandate. Plaintiff answered all of the questions thoroughly, with detailed explanations of the EEO concepts, theories and case law pertinent to the questions, as well as specific examples of Plaintiff's demonstrated mastery of the relevant skills and concepts.

18. When Plaintiff discussed EEOC's Management Directive 715, during the interview, General Scott told Plaintiff that no one had explained that Directive as well as Plaintiff did, and that he finally understood what it stood for. Plaintiff noted that although each panel member appeared to be taking notes, they did not take a lot of notes during the interview.

19. Plaintiff later learned that he had not been selected for the position and in fact, Deborah Hayes, the African American female whom he had supervised, had been selected. Plaintiff was surprised because he knew that his credentials far exceeded those of Ms. Hayes.

20. According to the Library's final administrative decision, General Scott, an African-American male, the Deputy Librarian of Congress and the selecting official for the position, stated that Ms. Hayes' skills and abilities were a "better fit" for the organization.

21. However, considering Plaintiff's superior skills, abilities, experience and relevant education, Defendant's stated reasons for not selecting Plaintiff are not the true reasons for

Defendant's actions; instead, they are a pretext to hide Defendant's discriminatory animus.

22. Defendant did not and cannot articulate precisely what skills and abilities possessed by Ms. Hayes make her a "better fit" for the Library as compared to Plaintiff.

23. Indeed, Ms. Hayes greatly exaggerated her skills and experience on her application for the position. Defendant should have known at the time of the selection that these representations were inaccurate. Indeed, Plaintiff later learned that Ms. Hayes had stated in her application that she was a "Deputy Division Chief" at the Department of Commerce. Ms. Hayes was not in fact a Deputy Division Chief at the U.S. Department of Commerce. Ms. Hayes also stated in her application that she managed senior EEO personnel while at the Department of Commerce. But Ms. Hayes was not a supervisor while at the Department of Commerce. Ms. Hayes also stated in her application that she was the principal advisor to the Secretary and Deputy Secretary of Commerce, but in fact she was neither.

24. Defendant's actions with respect to the selection also demonstrate pretext. First, despite the Library's Affirmative Action Recruitment Plan which indicated an under-representation of Hispanic males, and Plaintiff's superior qualifications, General Scott chose to hire an African American female.

25. Also, the Report of Investigation conducted by an investigator from the Personnel Appeals Board at the Government Accountability Office reveals additional evidence of discrimination against Plaintiff. The investigator concluded, after conducting an investigation and a supplemental investigation, that "[t]he preponderance of the evidence establishes that the Library's articulated reason for selecting Ms. Hayes was a pretext for unlawful discrimination based on race, sex, . . . and national origin. Thus, the [Personnel Appeals Board] recommends

7

that the Library make a determination that [Plaintiff] was the subject of unlawful discrimination . . . ."

26. The investigator found that the Library improperly claimed that Ms. Hayes was the most knowledgeable in the laws, policies and procedures in the civil rights arena, and that she had been assessed as having the greatest ability to interact with others in the affirmative action, alternative dispute resolution and equal employment opportunity areas. But, in the rating and ranking process in the selection for the position, Plaintiff had been rated higher than Ms. Hayes with respect to knowledge of the laws, policies and procedures in the civil rights arena.

27. Following the issuance of the vacancy announcement, the Library convened a Job Analysis Panel ("JA Panel"). The JA Panel was to consist of the selecting official and at least two Subject Matter Experts. The Subject Matter Experts were supposed to be persons who are performing, have performed or who are very knowledgeable of the responsibilities and tasks of the position, and who are above the grade level of the position. General Scott, the selecting official, requested that Deanna Marcum, a Senior Level Associate Librarian for Library Services, and Gilbert Sandate, the incumbent in the position, to serve as SMEs.

28. The JA Panel was to develop, among other things, criteria for the job and validated rating tools to measure levels of proficiency for the job competency criteria.

29. Thereafter, the Interview Panel, which consisted of the same individuals as on the JA Panel, rated and ranked applicants according to the criteria that it had developed. According to the Library's Merit Selection Plan, dated June 10, 2005, the Interview Panel must "us[e] standard procedures and questions developed in advance of the posting and asked of all applicants ..." One of the Hispanic female applicants indicated that the members of the Interview

Panel asked her for her college grade point average (GPA). This type of question is usually asked of applicants who lack prior experience working for the Federal Government or who are college interns. This applicant had prior work experience in the Federal Government. In addition, Mr. Ponce was not asked about his college GPA. The Interview Panel did not follow the rules of its own Merit Selection Plan of asking all applicants the same questions.

30. Plaintiff was rated more highly than Ms. Hayes in the aspect of knowledge of the laws, policies and procedures in the civil rights arena.

31. In addition, even though the Library touted Ms. Hayes as having the greatest ability to interact with others in the affirmative action, alternative dispute resolution and equal employment opportunity areas, she was not rated with respect to that ability.

32. In addition, General Scott improperly and inaccurately claimed that he had obtained a reference for Ms. Hayes in which her former second-line supervisor supposedly called her a "jack of all trades," "patient," and "a cut above her peers." Ms. Suzan Aramaki, Ms. Hayes' former second-line supervisor, stated that she did not say these things and that other aspects of General Scott's rendition of her reference were inaccurate.

33. The manipulation of the ratings and the inconsistent application of the criteria also demonstrate that Plaintiff was subjected to discrimination when he was not selected for the position.

34. In addition, General Scott has given inconsistent explanations of his reasons for selecting Ms. Hayes for the position. General Scott informed the investigator that the fact that Ms. Hayes was already employed by the Library did not have any impact on his decision to select her. However, General Scott apparently told Mr. Sandate that he selected Ms. Hayes because,

9

among other things, she already knew the Library and its key players. This justification is pretextual because it is inconsistent. It is also pretextual because Ricardo Grijalba, a Hispanic male who also was interviewed for the subject position, had served as the Library of Congress's Chief of the EEO Complaints Office before Selectee Hayes was hired by the Library at the GS-15 level – and, thus, knew the Library and its key players much better than Selectee Hayes.

35.   During the investigation of Plaintiff's administrative complaint, Defendant failed to provide requested information to the investigator, Frank Mack. This eventually led the investigator to conclude that the Defendant unreasonably obstructed the investigation of Plaintiff's complaint. For example, Jesse James, Jr., then from the Library's Office of the General Counsel, refused to allow the investigator to personally interview General Scott, the selecting official. Instead, Mr. James only allowed General Scott to respond to written interrogatories, which Mr. James was permitted to either author or edit prior to release. This violated Section 1 of Library of Congress Regulations 2010-3.1, which states that "it is the policy of the Library to provide an impartial and expeditious counseling and investigatory activity as part of the Equal Employment Opportunity Program ... [and] all staff members shall cooperate in providing information and consultation." The Library's Chief of the EEO Complaints Office, Ricardo Grijalva, maintained that the Defendant did not have good cause in prohibiting the investigator from directly interviewing General Scott, the selecting official in the matter. In a December 15, 2006 memo to Jesse James, Ricardo Grijalba indicates "it is my belief that your conduct is an intrusion into the EEO process and that you [Jesse James] are exceeding your authority by creating your own personal self-made agency policies when the EEO process poses a challenge to defending these matters. I am aware that by utilizing written interrogatories, this

may allow you [Jesse James] to control the outcome of General Scott's responses to this inquiry."

36. Notwithstanding the recommendations of the Personnel Appeals Board, Defendant rejected the recommendation and determined that Plaintiff was not a victim of discrimination.

37. Even when Defendant learned through the Report of Investigation that Ms. Hayes' qualifications were not as she had represented on her application for the job, Defendant failed to remedy the situation by selecting Plaintiff for the job instead. This too showed Defendant's discriminatory animus toward Plaintiff.

38. General Scott also had a history of discriminating against Hispanic males. In another earlier selection for a GS-15 position at the Library of Congress, General Scott selected the same Deborah Hayes, an African American female, over Milton Belardo, a Hispanic male. Mr. Belardo had far superior qualifications to Ms. Hayes for that GS-15 position. Defendant claimed that the selection was made because Ms. Hayes had more recent supervisory experience than Mr. Belardo, but according to Mr. Belardo, that was not true.

39. Plaintiff had been contacted for a reference for Ms. Hayes with respect to the earlier GS-15 selection. Plaintiff informed Mr. Sandate, who was also on the panel for the selection of the SES position for which Plaintiff later applied, that Ms. Hayes was an excellent employee but that her challenge would be with her interpersonal skills when she became a supervisor.

40. Because of this conversation and other information possessed by Defendant at the time of the selection for the SES position, Defendant knew that Plaintiff had supervised Ms.

Hayes and that Plaintiff had far superior qualifications to Ms. Hayes.

41.     In another instance, General Scott terminated early the temporary promotion of a Hispanic male and instead extended the temporary promotion of Ms. Hayes. This too shows discriminatory treatment toward Hispanic males. Moreover, General Scott informed this Hispanic male, Ricardo Grijalba, who had served as the Library's Chief of the EEO Complaints Office, that he had not selected him for the subject position because "you talk too fast."

42.     Mr. Sandate, who was interviewed by the investigator with respect to Plaintiff's discrimination complaint, refused to answer any questions regarding his knowledge of Ms. Hayes' credentials when she was selected for the GS-15 position. Specifically, the investigator asked Mr. Sandate whether he had conducted a reference check on Ms. Hayes, what information, if any, he had obtained about her duties while working at the U.S. Department of Commerce, and what information, if any, he shared with General Scott regarding Ms. Hayes. Mr. Sandate refused to answer. The investigator found that Mr. Sandate's refusal, among other things, supported an inference of discrimination against Plaintiff.

43.     In September 2007, the Library's Office of Inspector General released a report highly critical of the Library's Office of Workforce Diversity, where Plaintiff had applied but not been selected for the Director position. The report stated, among other things, that the Office of Workforce Diversity was "not properly focusing its affirmative action program."

44.     The Interview Panel did not ask the applicants any questions related to their ability to manage an affirmative action program.

45.     The Inspector General's report criticized the Office of Workforce Diversity while Ms. Hayes was in charge of that office. Ms. Hayes was selected for the position of Director for

Workforce Diversity at the Library of Congress on September 18, 2006, and left the Library of Congress to take another position with the U.S. Mint as a GS-15 in February 2008. It is apparent that the mismanagement of the affirmative action program was caused by Selectee Hayes.

46.    After Ms. Hayes' departure, Defendant should have offered the position to Plaintiff. However, the Defendant filled the job on a temporary basis, and nearly six months later, has not yet posted the vacancy announcement to fill the job on a permanent basis.

47.    Defendant chose Jesse James, Jr., to fill the job on a temporary basis. This too shows Defendant's discriminatory animus, considering Mr. James' role in obstructing the investigation of Plaintiff's complaint.

48.    Ms. Hayes was never qualified for the position at the Library of Congress. In fact, as stated above, she was forced to take another job at another federal agency in February 2008 at the lower GS-15 grade level.

49.    When Mr. James came on board as Acting Director of the Office of Workforce Diversity in March 2008, he informed the EEO staff that he would be cutting 17 of the 18 positions in the office; planned to abolish all diversity celebrations at the Library; viewed the Diversity Advisory Council at the Library as "perfunctory;" and disagreed with the Library's historic and current approaches to the recruiting of diverse groups.

50.    The Defendant's conduct, as specified above, violates Title VII in that Defendant discriminated against Plaintiff in the terms and conditions of his employment because of his sex, race, and national origin. Because of this violation, Plaintiff has suffered economic injury in that he was denied a position that would have resulted in greater pay and other benefits. Because of this unlawful discrimination by the Defendant, Plaintiff has suffered and continues to suffer

emotional and mental distress, anguish, humiliation, and loss of reputation, all of which have diminished his enjoyment of life and caused him other pain and suffering.

Count One
(Race Discrimination)

51. The foregoing paragraphs are realleged and incorporated by reference here.

52. Defendant's conduct as alleged above constitutes race discrimination under Title VII against Plaintiff. The stated reasons for Plaintiff's non-selection were not the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

Count Two
(National Origin Discrimination)

53. The foregoing paragraphs are realleged and incorporated by reference here.

54. Defendant's conduct as alleged above constitutes national origin discrimination under Title VII against Plaintiff. The stated reasons for Plaintiff's non-selection were not the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

Count Three
(Gender Discrimination)

55. The foregoing paragraphs are realleged and incorporated by reference here.

56. Defendant's conduct as alleged above constitutes gender discrimination under Title VII against Plaintiff. The stated reasons for Plaintiff's non-selection were not the true

reasons, but instead were pretexts to hide defendant's discriminatory animus.

## Relief Requested.

WHEREFORE, Plaintiff requests that the Court award him:

1) Retroactive placement in the position of Director for Workforce Diversity at Library of Congress at the Senior Executive Level, with all attendant back pay, benefits, interest, and other emoluments of employment;

2) compensatory damages in an amount sufficient to compensate for the pecuniary and non-pecuniary injuries he has suffered such as but not limited to emotional distress and pain and suffering;

3) costs and reasonable attorneys' fees incurred in connection with this lawsuit and the underlying administrative proceedings, and

4) such other damages and relief as is deemed just.

## JURY DEMAND

Plaintiff requests trial by jury.

                                                         /s/ Cathy A. Harris  
Cathy A. Harris, Bar No. 467206  
Michael J. Kator, Bar No. 366936  
KATOR, PARKS & WEISER  
1200 18th Street, N.W.  
Suite 1000  
Washington, D.C. 20036  
(202) 898-4800  

Attorneys for Plaintiff

16

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

JORGE PONCE
9506 Retriever Road
Burke, VA 22015

88878

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Cathy A. Harris
Michael J. Kator
Kator, Parks & Weiser, PLLC
1200 18th Street, NW #1000
Washington, DC 20036
(202) 898-4800

## DEFENDANTS

JAMES H. BILLINGTON
Librarian, United States Library of Congress
101 Independence Avenue, SE
Washington, DC 20540

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-01028
Assigned To : Collyer, Rosemary M.
Assign. Date : 6/16/2008
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⦿ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

(H. Employment Discrimination is circled/X'd as selected category)

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 2000

Discrimination based on race, national origin and gender in federal employment. Jurisdiction under Title VII of the Civil Rights Act of 1964, as amended,

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ backpay, benefits, interest, comp damages    Check YES only if demanded in complaint    JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☐    If yes, please complete related case form.

DATE 6/16/08    SIGNATURE OF ATTORNEY OF RECORD [signature]

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.